ANNA M. THELIN *vs.* FREDERICK H. DOWNS ET AL.
ANNA M. THELIN *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, New Haven, January Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued January 23d—decided March 2d, 1929.

*Raymond E. Baldwin,* for the appellant and appellee (plaintiff).

*Robert H. Gould,* for the appellants (defendants Frederick H. and William P. Downs).

*Alexander L. DeLaney,* with whom was *Raphael Korff,* for the appellee (defendant city of Bridgeport).

MALTBIE, J.  These two actions arise out of the same accident.  The plaintiff was standing on the sidewalk of John Street in Bridgeport, waiting for a bus, when, as the court finds, a piece of brick fell from the wall of a building abutting on the sidewalk, striking her on the head and causing her serious injuries.  This wall was the outer wall of a building owned by the defendants Downs.  Prior to 1918, for approximately seventy-

five years, there had been a building, owned by Still-
man and others, where the portion of John Street upon
which the plaintiff was standing is now located. This
building and that of the defendants Downs had been
separated by the wall in question, an inside party wall,
about eight inches in width, approximately one half
of which rested on the lands of each of the adjoining
owners. In 1918 the defendant city laid out the portion
of John Street in question, fixing the northerly line
coincident with the boundary line between the prop-
erties of the defendants Downs and that of the Still-
man lot, thus causing it to run substantially through
the center of the wall. In the actual physical develop-
ment of the street, however, while the city tore down
the building on the Stillman lot, it left the wall; had
it not done so it would have left the building of the
defendants Downs exposed to the elements or caused
its collapse. The wall, which was built of the sort of
brick used for interior walls, less closely laid than
would have been the case in an outer wall, was left in
a ragged condition at and near the top and within a
year thereafter the defendants Downs placed a lapped
tile coping along the top. The wall began to deteriorate
and in 1920 firemen of the city removed certain loose
particles. In 1921 the defendants Downs secured a
temporary injunction restraining the city from inter-
fering with the wall and that injunction has since
continued in force. For about five years before the ac-
cident the wall was out of repair, portions of brick had
become loosened, and pieces of mortar, plaster and
brick had fallen from it. The defendant city had notice
of the condition of the wall in ample time to have
repaired it before the accident and the defendants
Downs knew or by reasonable inspection might have
known of its condition in ample time to have repaired
it before the accident and this reasonable care on their

part required them to do. The trial court gave judgment for the plaintiff in the action against the defendants Downs and for the defendant in the action against the city. From the judgment in the former action the defendants have appealed and from that in the latter the plaintiff has appealed.

We consider first the appeal in the action against the defendants Downs. The plaintiff based her claim for recovery upon the negligence of the defendants in failing to maintain the wall in a proper condition or take precautions to safeguard travelers on the street from being struck by brick or loose pieces falling from it, the first count resting upon a claimed obligation of the defendants to exercise precautions as to the whole wall and the second count resting upon a like obligation as to "their part" of the wall. As it does not appear from the finding what part of the wall the brick fell from, the second count must be disregarded.

The defendants seek several corrections in the subordinate facts stated in the finding, but in so far as these are pursued in the appeal, except in one instance, neither there nor in the motion to correct are any reasons assigned which comply with our rules and practice. *Siller* v. *Philip,* 107 Conn. 612, 141 Atl. 872. The defendants seek to strike out in its entirety one paragraph of the finding which embodies a considerable number of facts, many of which are not in dispute, and this in itself would be ground to deny the motion, for the trial court was not bound to cull out an isolated statement and consider that alone; *Holczer* v. *Independent Brass City Lodge, Inc.,* 104 Conn. 539, 540, 133 Atl. 666; but passing this, the finding which the defendants really wish to attack, that the plaintiff was struck by a brick which fell from the wall, is a most reasonable inference from the testimony in the case. The only claimed addition to the finding properly before us seeks to insert

a statement that in 1920 and 1924 the city made necessary repairs to the wall with the consent of the defendants Downs and left it in a safe condition, but as to this claim, the evidence in the record discloses as the sole fact established by undisputed evidence that in the fall of 1924 the city with the consent of the defendants Downs did make repairs to the wall. To this extent the addition is made.

The trial court has found that for about five years before the accident the wall was out of repair, that the defendants Downs knew or should have known of this, that reasonable care on their part required them to make repairs, but that they in fact neglected to do so except for the coping placed along the top of the wall shortly after the destruction of the Stillman building; and, as a conclusion, that the neglect of the defendants to maintain the wall in a reasonably safe condition was the proximate cause of the plaintiff's injuries. The defendants attack this conclusion, but it was a reasonable and legitimate deduction from the other facts found by the court. If, then, the defendants were under a duty to maintain the whole wall in a reasonably safe condition, the plaintiff was entitled to recover. *Ruocco* v. *United Advertising Corporation,* 98 Conn. 241, 119 Atl. 48; *Kane* v. *New Idea Realty Co.,* 104 Conn. 508, 515, 133 Atl. 686; *Murray* v. *McShane,* 52 Md. 217; 3 Shearman & Redfield on Negligence (6th Ed.) § 702.

It is not necessary in this action, in order to establish the defendants' liability, to hold that, merely by reason of their rights in the wall, they came under an obligation to keep the whole in repair. In the proceedings for an injunction against the city, brought in 1921, they alleged that the city was unlawfully threatening to tear down a portion of the wall, with the necessary result of destroying the adjacent portions which en-

closed their building and furnished it with support. They secured an injunction forbidding the city, its agents and employees, from touching, interfering with, altering or removing the wall or doing any act whatsoever in, upon or with relation to it. The court has found that since 1921 they have assumed exclusive control of the wall, and in an exhibit made a part of the finding it appears that as late as June, 1927, they entered into a stipulation with the city that the case in which the injunction was secured should remain upon the docket. They thus definitely took and since have maintained the sole right of control over the wall and, at least temporarily, have prevented the city, the only other party interested in it, from making any repairs, except as it was done once with their permission. Now, when from its lack of repair an innocent traveler in the street has suffered injury, they cannot in justice and equity be permitted to deny that the obligation to maintain the whole wall in repair rested upon them at the time of the injury. *Baldwin* v. *Porter*, 12 Conn. 473, 482; *South Branch R. Co.* v. *Parker*, 41 N. J. Eq. 489, 493, 5 Atl. 641; *Perry* v. *Calhoun*, 27 Tenn. (8 Humphr.) 551, 555; *Pacific R. Co.* v. *Lindell's Heirs*, 39 Mo. 329, 345; *Maltman* v. *Chicago, Milwaukee & St. P. R. Co.*, 72 Ill. App. 378; 21 Corpus Juris, 1239. Moreover, having assumed and maintained full and exclusive control of the wall, the defendants were as much obligated to use reasonable care to protect a traveler in the street as they would have been had they been full owners of it. *Reinhardt* v. *Holmes*, 143 Mo. App. 212, 224, 127 S. W. 611. In *Sellick* v. *Hall*, 47 Conn. 260, 271, 272, we point out that an owner of land over which a street had been laid out, but of which the municipality had not taken possession, would be held liable if a nuisance were maintained on the land, because "the premises would

have been entirely within his possession and control as much as before the street was laid out." One who asserts and maintains control of property may be liable for defective conditions existing thereon though he have in fact no title to it. *Inhabitants of Woburn v. Henshaw,* 101 Mass. 193, 199; *Alaska Treadwell Gold Mining Co.* v. *Mugford,* 270 Fed. 753; *Baker* v. *Tibbetts,* 162 Mass. 468, 469, 39 N. E. 390; *Palmer* v. *St. Albans,* 56 Vt. 519; *Harris* v. *Eastern Wisconsin Ry. & Lt. Co.,* 152 Wis. 627, 140 N. W. 288; 45 Corpus Juris, p. 881, § 317.

Two rulings on evidence are made grounds of appeal. The first was the exclusion of an inquiry made of one of the defendants as to the reason why they secured the injunction. The fact that they did secure it was the significant thing; the grounds upon which it was sought appear in the complaint, which was an exhibit; the relevancy and materiality of the defendants' motives do not appear from the record. The other ruling was the exclusion of a letter from the defendants' attorney to the building inspector of the city with reference to the consent given to proceed with certain repairs upon the wall made under his direction. The letter purported to state the position of the defendants with reference to the giving of that consent. As it was not marked for identification, we are hardly in a position to review the ruling of the court; *Roberti* v. *Barbieri,* 105 Conn. 539, 543, 136 Atl. 85; but even if we assume that it stated any facts or reasons which were material and relevant, the letter was certainly not the proper way to prove them. In the action against the defendants Downs, there is no error.

In the action against the city, the first count of the complaint rests upon a claim that the unsafe condition of the wall constituted a defect in the street within the provisions of § 1414 of the General Statutes.

and the second count alleges that the injury was due to the failure of the city properly to lay out and establish the street, particularly in that it left the wall within its limits without adequate safeguards to prevent brick falling from it into the highway. That the wall did not constitute a defect within the statute is settled by prior decisions of this court; the allegations of the second count do not allege the maintenance of a nuisance due to the condition of disrepair into which the wall fell, but rather fault on the part of the city in the manner in which it laid out and developed the street; and this would be no more than a failure to perform a public governmental duty for which no action would lie. *Hewison* v. *New Haven,* 34 Conn. 136, 143; *Dyer* v. *Danbury,* 85 Conn. 128, 130, 81 Atl. 958; *Vezina* v. *Hartford,* 106 Conn. 378, 138 Atl. 145. No cause of action was established under these counts and we have only to deal with the third, which rests upon the claimed negligence of the city in failing to maintain its part of the wall in repair.

When the city laid out the street, it included within it the whole of the building on the Stillman lot, the northerly line of the street being coincident with the boundary line between that lot and the Downs property. Later, it developed the street in accordance with the layout except as to the narrow strip underneath the part of the wall standing within the lines of the proposed street. By its layout it acquired and now enjoys the right to open and use the entire Stillman lot up to that boundary line for highway purposes, except for such right to the maintenance of the wall as the owners of the Downs property may possess, which do not appear in the finding to have been taken. By taking possession of the Stillman lot, demolishing the building on it and opening the street, it has excluded its former owners from all use or occupation of the

property and must be regarded as having taken possession of the entire lot, thereby differentiating this case from the supposititious situation presented in *Sellick* v. *Hall*, 47 Conn. 260, 271. Except as other principles of law may prevent, it succeeded to such obligations as would have rested upon the owners of the Stillman property had they continued in possession of the strip of land upon which the wall stood after the building was demolished. Being a party wall, standing in part upon land on each side of the boundary and showing by its composition that it was erected as a part of the original construction of the building on the two lots, we are bound to assume that the title to the portion standing upon each lot was in the owner thereof, subject to the easement of support belonging to the owner of the other building. *Whiting* v. *Gaylord*, 66 Conn. 337, 345, 34 Atl. 85; *Normille* v. *Gill*, 159 Mass. 427, 24 N. E. 543; *Springer* v. *Darlington*, 207 Ill. 238, 244, 69 N. E. 946; *Fidelity Lodge* v. *Bond*, 147 Ind. 437, 45 N. E. 338, 46 id. 825; Jones on Easements, §§ 632, 649; 2 Tiffany on Real Property (2d Ed.) p. 1225; 30 Cyc. p. 772. That being so, where the building upon one of the adjoining lots is torn down leaving the wall standing, the duty to exercise care that third persons should not suffer injury from want of repair in the portion of the wall standing upon that lot must rest primarily upon the one owning or in possession of the lot.

These principles would impose that duty upon the city in the instant case unless some principle of law prevents. The trial court ruled that any such duty resting upon the city was of a public governmental nature for a breach of which the city would not be liable. The portion of the land under the wall the city has not in fact devoted to any public use. As to this strip it occupies no different position than it would had it

acquired a tract of land wider than necessary for the present development of a street laid out across it and having developed the street still retained possession and control of the remaining strip. The possibility that at some time in the future the city may devote the land under the wall to highway purposes does not now so affect its holding as to make it one for a public governmental use. Indeed, the record suggests that its purpose in not developing the land under the wall was to serve its private interest in saving the damages which otherwise it might have to pay for the taking of the right of support which the owners of the Downs building could claim in it. However that may be, the city was holding the strip of land in the same capacity as would any individual who might have acquired the Stillman lot and having torn down the old building failed to erect another. That being so, it would be liable for any negligent omission in the proper care of the wall. *Pekin* v. *McMahon*, 154 Ill. 141, 154, 39 N. E. 484; *Davis* v. *Rockport*, 213 Mass. 279, 100 N. E. 612; *Clark* v. *Manchester*, 62 N. H. 577; 2 Shearman & Redfield on Negligence (6th Ed.) § 285; 6 McQuillin on Municipal Corporations (2d Ed.) § 2846. The condition of disrepair was not one caused by the owners of the Downs property; while they had, without right, claimed control of the wall, the city, so far as appears, had never assented to their right of exclusive possession beyond obedience to the injunction; had, indeed, itself made repairs; and while the assumption of control by the owners of the Downs property was sufficient to establish their liability for the plaintiff's injuries, it could not excuse the city from itself exercising proper care to prevent such injury. See *Sessengut* v. *Posey*, 67 Ind. 408.

The trial court also ruled that the existence of the temporary injunction restraining the city from doing

anything to the wall was a justification for its failure to act. That injunction was merely a temporary one, issued January 24th, 1921, without notice or hearing. It is obvious from what we have said that whatever rights the owners of the Downs property might have in that proceeding to restrain the city from so dealing with the wall as to injure their easement of support, the injunction was much too broad, and, had the city, instead of adopting a policy of *laissez faire,* asked to have it modified to permit it to make such repairs to the wall as were necessary to protect passersby in the street, such a modification would undoubtedly have been granted. Yet for five years, charged with the knowledge that the wall was out of repair, it did nothing to secure the vacating or modification of the order. It cannot thus set up its own remissness as excuse for its own breach of duty.

The trial court reached its conclusion that the city was not liable under the third count upon the grounds we have discussed. It did not pass upon the question whether the piece of brick which struck the plaintiff fell from such a portion of the wall or under such circumstances that a breach of duty on the part of the city, proximately resulting in injury to the plaintiff, was established. We must therefore remand the case for a new trial.

In the action of Thelin v. Downs, there is no error. In the action of Thelin v. City of Bridgeport, there is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.